## No. 3622

### Second Circuit

## FLETCHER v. TEXAS CO. ET AL.

(November 18, 1929.  Opinion and Decree.)
(December 31, 1929.  Rehearing Refused.)

Julius T. Long, of Shreveport, attorney for plaintiff, appellee.

Spearing & Mabry, of New Orleans, and Pugh, Grimmet & Boatner; J. N. Marcantel; Wilkinson, Lewis & Wilkinson, and Roberts & Naff, of Shreveport, attorneys for defendants, appellants.

REYNOLDS, J. Homer U. Fletcher sued the Texas Company and S. B. Goodman, seeking judgment against them in solido for $20 a week for 362 weeks under the Workmen's Compensation Act, Act No. 20 of 1914, as amended.

He alleged "that on or about February 6, 1928, while he was in the employ of and working for the said Texas Company and the said S. B. Goodman in the position and capacity of derrick man or working derricks at a daily rate of pay of $5.50," he fell a distance of 30 feet to the ground from an oil well derrick on which he was at work, and sustained certain described injuries, and was thereby permanently totally disabled to do any work of a reasonable character.

He further alleged that he had been paid compensation up to October 29, 1928.

And he prayed for judgment against Goodman and the Texas Company in solido for $20 a week for 362 weeks, the first payment to be decreed due as of October 29, 1928, with legal interest on each installment from its maturity until paid.

Goodman filed an exception of no cause of action, and it was tried and overruled.

Each of the defendants filed a separate answer.

The Texas Company denied that Fletcher was in its employ or that it had paid him any compensation, and denied that Goodman was in its employ or was its agent, and alleged that its relations with him were only those named in a contract between him and it dated January 5, 1928.

And it alleged, on information and belief, that Fletcher was in the employ of Goodman and that the compensation alleged to have been received by him was paid him by Goodman's indemnitor, Aetna Life Insurance Company.

Goodman's answer was, in effect, a general denial.

On these issues the case was tried, and judgment was rendered and signed on May 15, 1929, in favor of the plaintiff and against both defendants in solido for $20 a week during his disability, not exceeding 362 weeks, the first payment being decreed due as of October 29, 1928, with legal interest on each installment from its maturity until paid, and fixing the fees of the four physicians who testified as experts on behalf of plaintiff at $20 each, and taxing their fees as costs of suit.

From this judgment both defendants appealed.

## OPINION

### EXCEPTION OF NO CAUSE OF ACTION

The exception was based upon the theory that the allegations of the petition show that Goodman was merely an agent of the Texas Company, and therefore not individually liable to plaintiff, and paragraph sixth of the petition is referred to as supporting the contention. This paragraph reads as follows:

"That The Texas Company as owner of the mineral rights and land and the oil, gas and other minerals in and under the said land, had undertaken to have said well drilled as part of and in pursuance of its business and occupation of extracting oil and gas from the ground, and refining, selling and dealing in oil and gas generally; that the said Goodman had contracted with the said The Texas Company to do the actual drilling of the said well by the foot at a certain price, but the said The Texas Company retained and had a supervision over the manner and way said drilling was being done, and had authority to stop or speed up the said drilling under the nature of the said contract under which said work was being done; that the labor being used or men working on said well, or many of them, were being paid directly by the said The Texas Company."

And Goodman contended that the allegation, in the second paragraph of the petition, that plaintiff was in the employ of both himself and the Texas Company, must be deemed qualified by the allegation of the sixth paragraph, that Goodman was engaged in drilling a well for the Texas Company under a contract, and that the petition does not show a cause of action, against him either individually or as an independent contractor.

The exception was not adverted to in this court, and we therefore presume it is abandoned. However, we think the petition, taken as a whole, and given the liberal construction required by the Workmen's Compensation Act, states a cause of action against Goodman no less than against the Texas Company.

### ON THE MERITS

The Texas Company is engaged in the business of drilling wells for oil or gas and extracting these substances from the subsurface and refining the oil and marketing the gas and products of the oil, and, in this connection, erects derricks, lays pipe, and so on.

Goodman is engaged in the business of drilling wells for hire.

On January 5, 1928, Goodman and the Texas Company entered into a contract in writing whereby the former agreed to drill for the latter a certain well seeking gas or petroleum, and plaintiff, at the time he was injured, was in the employ of Goodman helping to do this work.

As to his employment, plaintiff testified:

"Q. For whom were you working and how were you working?
"A. Working as derrick-man on a drilling rig for S. B. Goodman, drilling contractor for The Texas Company, on The Texas Company's lease."

He further testified that he was up on a derrick, about 30 feet from the ground, setting casing, and that something knocked the scaffold board on which he was standing from under him, and he fell to the floor. He was rendered unconscious by the fall. As to the nature of his injuries, he testified:

"Q. What side of your—what part of your head was hurt the worst? And face?

"A. Well, the right side of it there.

"Q. What were the injuries on that side?

"A. Well, as well as I recollect about the injuries, the whole side of my head was pretty well bruised up, and a jaw tooth shattered off. Knocked one jaw tooth—when I come to recollect about it or when I knowed anything in the world, that tooth was out, and another one half knocked off, and then my other teeth were shattered pretty well.

"Q. On the right side?

"A. Yes, sir; as well as trouble in the ear. It was bleeding out of the ear. They told me about that.

"Q. Any bleeding out of your nose and mouth?

"A. Yes, sir."

He further testified:

"I found that I haven't got any use hardly at all of the left foot as well as the leg. Left hand and right foot and leg. The left hand was injured, and I haven't got no grip in it, as well as the arm, up to the shoulder; aching sensation down on the back of the shoulder, and tight feeling in the chest between the collar bone and head; and when I wake up at night, if I try to sleep on the left side, it is dead, it is numb from about the heart clear on around, and I have to work that arm around. After a while it will come to itself. It is dead, feels like it is asleep, and I can't sleep on that side at all, and I have some steady pains around there. If I go around and try to work any, which I have tried a little, just little chores on the farm, if I get to doing a little work, I have the sensation in the head, kind of blinding, and then it starts kind of a rambling pain in the breast, and I have to stop work and lay off."

"Q. Can you do any work at all?

"A. No, sir; I haven't been able, so far. I have a weak back as well as left hip. The pain in the hip, I have it now just from walking around town a little before court today. I have that every time I walk, from the left hip.

"Q. What is the disability you say you have in the right leg or foot?

"A. I just haven't got no use of it. It just gives out on me and feels like I haven't got no leg there most of the time when I walk on it too much. If I apply the brace, it swells up around the ankle, and I can't go without the brace."

Dr. S. L. Williams testified that plaintiff came to him on February 7, 1928, for treatment. That he found he had "sustained injuries to his face, head, neck, chest, and the left wrist, arm and right leg at the ankle joint, fracturing the small bone about an inch from the ankle and the internal malleolus on the right side in the right joint. The condition was right serious. The whole leg was bruised and swollen so much so that the dressing that Doctor Bell had placed on it were so open and exposed it left it open for inspection from day to day and for that reason we could not put him in a cast until about the sixteenth."

"Q. It was about eight days before you put him in a cast?

"A. Yes. And, of course, he had other injuries, internal injuries to the extent of having great pain disturbances and his stomach was very muchly upset for about three days. He vomited and expectorated blood. The records show that. It was not necessarily a deep cavity but he would just spit up blood. The lesions were so very excessive that he was bordering on traumatic pneumonia. We had a little trouble trying to get him nourished through the stomach that was badly irritated and inflamed."

Dr. Thomas Ragan testified that he examined plaintiff during the week of the trial, and stated:

"I took his history of having had a fall and then made the usual physical examination. I did not find anything now specially wrong with his heart or lungs. I think his kidneys were all right. The things he is complaining of specially were his left arm and right leg. The hand had been broken, and we can feel the callus where the bones were united, and you could also feel where the bone in the leg was broken. That left arm was apparently so weak it had very little grip in it and very little force in it any way. There were no physical signs to indicate just why it was so but it was there and it was very evident that he was not putting on but that there was an actual weakness in that area. The right leg below the knee was a little smaller than the other. He wears a brace. I had him remove the brace and tested out the sensation. He has very little use of that foot and leg and but for the brace at the present time he could not walk hardly at all. The leg bobbles and in this leg the lack of sensation is very pronounced. It has practically no sensation from the knee down. The sensation is practically gone. You can prick it or stick it or tickle it, do anything you wish to it, apply hot or cold to it, and he has no sensation below the knee; but by applying the electric battery the muscles can be moved and it can be excited in a normal way, but their response is rather slower than normal, you might say.

"Q. Did you try the battery to the injured arm?

"A. I did not try that sensory test to his arm but to his foot I did. He has flat foot. Both feet are flat. I don't know when that occurred, but they are extremely flat. In other words, the arches are all down and that condition is evidently painful to him, showing that that—it has been long enough for the bones to adjust themselves but the ligaments are very loose and the ankle is almost a flip-flop on the right side. I think that is partly due to the injury that he had and perhaps a good part of it is due to disuse, the support being given now by the brace rather than the muscles and ligaments; and then there is absolute lack of sensation in the skin."

Dr. E. L. Sanderson and Dr. G. H. Cassity testified that they had examined plaintiff shortly before the trial and detailed the result of their examination and their testimony as to what they found plaintiff's physical condition to be corroborates Dr. Ragan's testimony as to what he found it to be.

Dr. Guy A. Caldwell made an examination of plaintiff on July 16, 1928, and concludes his report, which was introduced in evidence, with the statement:

"Patient's present condition is one of total disability for heavy duty. I believe it is impossible at the present time to judge what may be his permanent disability or whether there will be any. He needs further treatment and observation."

And in a letter accompanying the report, also introduced in evidence, he gives it as his opinion that—

"It is probable that he (plaintiff) ruptured the external lateral ligament and a portion of the capsule of the joint on that side and they have never firmly healed although it would seem that he was in plaster long enough to permit this. It is possible that there is a loose body in the joint of a cartilaginous character which does not show in the picture."

The testimony of plaintiff and his testifying physicians as a whole establish that at the time of the trial plaintiff was totally incapacitated to do work of any reasonable character.

Dr. D. L. Kerlin, called by defendant, testified that he had examined the plaintiff from a neurological standpoint and that—

"From a nervous standpoint I did not find anything in the man's condition that would keep him from returning to work."

Dr. A. P. Crain, also called by defendant, testified:

"I examined his (plaintiff's) right ankle and his left hand and wrist. The right an-

kle shows a measurement of nine and one half inches. Left, eight and one half inches. This can be accounted for by bony growth and non-use to a great extent. There is a normal range of motion in the affected ankle, although he does complain of some pain. The reflexes and sensations and range of motion are about the same in both ankles. The left hand is one half inch larger than the right. Normal range of motion. Does not complain of any pain on manipulation. On examining his chest, I can find no evidence of injury in the chest. Heart slightly irregular, but I do not attribute this to injury. As to his disability, I can find none now, unless it is the pain he complains of. Of course I cannot tell how much he really has."

Dr. S. C. Barrow, also called on behalf of defendant, testified that he is a radiologist and had made a radiological examination of plaintiff, and that an x-ray of the upper two-thirds of the right leg of plaintiff, including the knee joint, showed negative for bony disease or injury.

The testimony of the experts called by defendant to testify as to plaintiff's condition does not, we think, conflict with the testimony of the experts called by plaintiff, except as to the condition of plaintiff at the time of the trial, and our opinion is that at the time of the trial he was totally disabled to do work of any reasonable character.

Plaintiff asks that the fees allowed the experts called by him be increased from $20 to some larger amount not named by him. The Workmen's Compensation Act leaves to the discretion of the court the amount of fees to be allowed experts called to testify as witnesses in cases brought under that act, and we see no good reason for interfering with the discretion exercised by the trial court in the instant case.

The Texas Company, besides asking us to reverse the judgment and dismiss plaintiff's suit on the merits, as to it, also requests us to annul the judgment, as to it, as void ab initio, for the alleged reason that the trial court orally rendered judgment rejecting plaintiff's demands as to it, and later, without having set aside its judgment orally rendered or granting a new trial, rendered, read, signed, and ordered filed in open court a written judgment in favor of the plaintiff and against it in solido with its co-defendant.

The minutes show, under date of May 1, 1929:

"For reasons orally assigned, there is judgment for plaintiff against S. B. Goodman for $20.00 per week for not over 362 weeks. Plaintiff's demands are rejected as to The Texas Co."

And, under date of May 15, 1929:

"Judgment read, signed and filed."
"This cause having been regularly tried, when, after considering the evidence and the law applicable thereto, the court being of the opinion orally assigned at the time of rendering this judgment that the law and the evidence are in favor thereof:
"It is ordered, adjudged and decreed that the plaintiff, Homer U. Fletcher, do have and recover judgment in his favor against the defendants, S. B. Goodman and The Texas Company, in solido, for the sum and weekly compensation of twenty dollars per week, beginning October 29, 1928, during his disability, not to exceed three hundred and sixty two weeks, with legal interest on each weekly payment from its maturity until paid, and all costs of this suit; that the fees of doctors S. L. Williams, G. H. Cassity, E. L. Sanderson and Thomas Ragan, as expert witnesses for plaintiff, are hereby fixed at twenty dollars each and taxed as costs herein; that the fees of attorney herein representing plaintiff are fixed at one-fifth the net amounts recovered on this judgment, not to exceed one thousand dollars.
"Judgment rendered in open court on 1st day of May, 1929.
"Judgment changed, rendered, read and signed in open court on 15th day of May, 1929.
"J. H. Stephens, Judge."

It does not appear from the record, nor is it contended here, that the Texas Company asked the trial judge, by motion for new trial or otherwise, to amend the judgment complained of. On the contrary, the minutes show, under date of May 15, 1929 —the very day the judgment was rendered:

"Oral motion made on behalf of defendant, The Texas Company, for orders of suspensive and devolutive appeal to the Circuit Court of Appeal, second circuit; appeal granted, returnable June 17th, 1929, the suspensive bond being fixed at $2,-000.00, and the devolutive bond at $150.00."

There is an apparent inconsistency in the Texas Company's request that, as to it, we reverse the judgment and reject plaintiff's demands, and also that we decree the judgment null ab initio; but, pretermitting this point, we are of the opinion that, where the minutes and the judgment differ, the latter controls on appeal. Watkins v. Watkins, 148 La. 728, 87 So. 726. However, the error of the trial judge, if the minutes be correct, is of little importance now, in view of the fact that the case was tried on its merits and the entire record is before us on appeal, enabling us to render such judgment as the district court should have rendered, if that judgment be erroneous. Edwards & Bradley v. Cowan Kerr Lumber Co., 153 La. 335, 95 So. 800.

Returning to the merits of the case, we are of the opinion that the relation of the Texas Company and S. B. Goodman was that of principal and contractor, within the meaning of section 6 of the Workmen's Compensation Law, and that both defendants are liable in solido to plaintiff; and we are of the further opinion that plaintiff is permanently totally disabled to do work of any reasonable character.

The judgment appealed from is correct, and accordingly it is affirmed.