McINNIS, Judge.
This is a suit for $378 for lumber sold to defendant on May 24, 1951. Defendant admits the correctness of the account, but denies any indebtedness to plaintiff for the reasons set forth in a reconventional demand it makes in the total sum of $891.70, made up of two items, one for $452.80 in connection with the purchase of some timber in Bossier Parish by Benton Creosoting Company and the other for $438.90 in connection with the overpayment by Benton Creosoting Company to plaintiff on the purchase of timber in Caddo Parish. Both of the claims were assigned by Benton Creosoting Company to defendant.
After trial on the merits there was. judgment for the plaintiff for $378 and in favor of defendant for $438.90 for the overpayment on the timber in Caddo Parish, and rejecting the demand for $452.80 in connection with the timber' transaction in Bossier Parish.
Plaintiff has appealed from that part of the judgment unfavorable to him. Defendant has not appealed and has not answered the appeal taken by plaintiff, thus leaving for consideration here, the correctness of the judgment of the district court on the reconventional demand concerning the Cad-do Parish timber.
Benton Creosoting Company and Kennedy Sawmills, Inc., had some kind of an agreement whereby the latter furnished funds for the purchase of timber, and probably handled the finished products of the creosoting company, which consisted of creosoted poles, pilings and posts.
D. E. Burchett, representing the creosoting company made an oral agreement with plaintiff to purchase the trees on the Caddo Parish tract of land that were suitable for piles and poles, at specified prices for different sizes and lengths, and there is no dispute as to the prices fixed. The agreement was that the creosoting company •would send its estimator on the land to select and mark the trees it wanted, and to estimate the size and length and class1 of the tree and to put a price on it (which the creosoting company contends was tentative). Plaintiff would then look at the tree before it was cut, and if he was satisfied that it would be more profitable to sell it to the creosoting company than to use it at his sawmill, it was then cut and debarked and transported by truck to the plant at Benton, where it was checked in by the receiving clerk, and measured for size and length and classed and priced, and credited to the timber charge that had been made against the tract from which it had been cut.
Mr. Burchett says that when the trade was made, Mr. Powell said that he was in need of money immediately, and it was agreed that the creosoting company would send its estimator on the land and have the trees it wanted cut, marked and priced, and if plaintiff agreed to sell, the estimator *424 would list them, and at the end of the week pay the amount of the estimate, and that when the poles and pilings were received at 'the plant .they would be graded and the price then fixed. If the estimator had underestimated or had overestimated the price of the tree an adjustment would be made, and .the prices fixed at the plant would control in making, a final settlement. Burchett is corroborated in this claim by John E. Kennedy, Jr., and to some extent by Eugene Brantley, a colored man who was the estimator who marked the trees and estimated their value.
Plaintiff denies that any such agreement was made,. and contends that (he was to be paid on the estimate Brantley made and that the question of adjusting the grades and prices later never came up.
Unfortunately, Brantley overestimated the value of the trees, as fixed at the plant, to the extent of $438.90. Three estimates were paid, the first on April 28, 1951 for $618.85, the second on May 12, 195-1 for $592.70 and the third on May 26, 1951 for $678.10, a total of $1,889.60. As checked in at the plant the same trees totaled $1,450.-70, leaving an overpayment of $438.90 if Burchett’s version of the agreement is accepted.
Counsel for plaintiff urges that if plaintiff was to be paid according to prices fixed at the plant there was no tise estimating the price in the woods, and has cited 17 R.C.L. 1095, Sec. 22, as follows:
“Sec. 22. * * * It has been stated as a general rule that an outright sale of certain standing trees, to be selected by the purchaser, passes title as soon as the buyer makes his choice and marks the particular trees. Such marking of trees is considered a mode of taking possession of them, and, as such, is an indicium of property. It reduces to certainty and makes specific the trees which are sold, as much as if they were felled. And so when standing trees are sold in contemplation of immediate separation from the soil as chattels, it has been held that the selection and marking of them by the purchaser with the knowledge and consent of the seller is a constructive delivery and passes the title. * * *”
Also Edwards & Bradley v. Cowan Kerr Lumber Company, 153 La. 335, 342, 95 So. 800. This case involved an entirely different factual situation, and for this reason we fail to see where it has any application here.
Cited also is definition of “stumpage” in 40 Words and Phrases, p. 337.
These authorities are not applicable to the proven facts in the instant case. The question here is whether the estimate and grade of the trees that Brantley made was final or whether the final grade was to be determined at the plant.
This question of fact the district court resolved in favor of defendant on its re-conventional demand, saying in the written opinion that “defendant has proven its demand by a preponderance of the evidence.’’
We agree with this conclusion, and accordingly the judgment appealed from'is affirmed. Costs of the main demand to be paid by defendant-appellee. Costs of re-conventional demand and of this appeal to be paid by plaintiff-appellant.